15059

EX PARTE JETER
JETER v. JETER
(8 S. E. (2d), 490)

September, 1939.

*Messrs. Bryan & Mozingo,* for appellant,

*Messrs. Hughes & White,* for respondent,

April 9, 1940.

The opinion of the Court was delivered by MR. E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

The appellant, referred to hereinafter as Mr. Jeter, and the respondent, referred to hereinafter as Mrs. Jeter, were married in South Carolina in 1925. They had one child who is now a minor about thirteen years of age. They lived together as husband and wife until about April, 1936, at which time they separated. On November 15, 1937, Mr. and Mrs. Jeter entered into an agreement of separation whereby Mr. Jeter promised to pay to Mrs. Jeter the sum of eighty dollars per month in lieu of alimony and support for herself and the minor child. This agreement further provided, "That the party of the second part shall have and retain the custody, possession and control of the said minor during the continuance of her minority." This agreement provided that the payments shall continue until the death of Mrs. Jeter or until her re-marriage, and until the attainment of her majority by said minor child. This agreement between the parties provided, among other things, that Mr. Jeter should take out certain life insurance and pay all premiums thereon, in which Mrs. Jeter was to be named beneficiary and the policy so drawn as to prohibit the insured from changing the beneficiary and from borrowing any funds thereon or creating any lien on the same. This agreement was signed by Mr. Jeter as party of the first part and Mrs. Jeter as party of the second part.

On or about the day that this contract was duly executed· an action was commenced in the Court of Common Pleas for Union County by Mrs. Jeter against Mr. Jeter for the purpose of having said agreement approved and confirmed by the Court. On November 22, 1937, a decree was signed by

Judge Sease in which it is set forth that the parties were living in a *bona fide* state of separation and executed a separation agreement. "The said written agreement is hereby confirmed and is adjudged to be fully binding and enforceable against each of the parties herein insofar as it applies to each of them respectively, and the same is hereby made a part of this decree and judgment, with the same force and effect as though it were incorporated *verbatim* herein." The concluding paragraph of this decree is as follows: "Further ordered and adjudged that this cause shall remain open until the termination of said agreement in accordance with its terms, and during said period either party to this action shall have the right to apply to this Court for such additional orders and decrees as may be necessary to enforce the performance by each party, of their respective obligations under the said agreement and under this decree."

The following is quoted from a subsequent decree of Judge Sease from which this appeal is taken:

"Thereafter and in May, 1938, contempt proceedings were started by Mrs. Jeter against Mr. Jeter for failure to make the monthly payments in accordance with the said agreement and decree. A rule to show cause was issued, and upon hearing the return thereto the said John Randolph Jeter was adjudged to be in contempt of Court, and was ordered to pay over to Mrs. Jeter the amount of monthly payments which had accrued at the time.

"In May, 1939, Mrs. Jeter again commenced contempt proceedings against Mr. Jeter for failure to pay the monthly installments that had accrued under said agreement and decree subsequent to the prior contempt proceedings, and a rule to show cause in the last mentioned proceedings was duly issued by this Court. Before this last mentioned rule to show cause was returnable, the defendant, John Randoph Jeter, filed a petition praying for modification of the decree of this Court dated November 22, 1937, whereby the agreement fixing the amount of the monthly payments was confirmed.

Upon this last mentioned petition a rule was issued by this Court requiring the said Helen Myrtle Tracy Jeter to show cause why the said agreement and decree should not be modified in accordance with the necessity of the case and why the matter should not be referred. In the last mentioned rule to show cause Mrs. Jeter was temporarily restrained from prosecuting the last mentioned contempt proceedings instituted by her. And the matter is now before this Court on the return to the rule to show cause why said agreement and decree should not be modified.

"In said return Mrs. Jeter raised the jurisdictional question that the Court now has no power or authority to alter or modify the decree whereby the aforesaid agreement was confirmed and made the judgment of the Court. For the reasons hereinafter set forth I agree with that contention, and therefore, I sustain her position.

"The question logically arises then, does this Court, in the absence of statutory authority and in the absence of a proper reservation in the decree, have power to modify its final decree issued November 22, 1937? I am of the opinion that this Court has no such authority among its inherent equitable powers. Apparently, this question has never been passed upon by the Supreme Court of this State, and in order that the point may be squarely presented to that Court in the event of an appeal, I hold that this Court has no power or jurisdiction at this late date to modify its final decree issued on November 22, 1938. That decree was passed in an action brought solely for the purpose of having the aforesaid agreement confirmed by this Court and of having said agreement made the judgment of this Court. The defendant, through competent counsel, filed his answer admitting that the plaintiff was entitled to a decree making provision for the enforcement and carrying out of said agreement. Furthermore, the said decree was consented to by the parties in person, as well as by their attorneys. The decree was passed as a final adjudication in the matter and

when the same was issued the Court thereby exhausted its jurisdiction in the cause."

From the decree last above quoted this appeal is taken. The following questions are raised by this appeal:

"1. Does a Court of equity in South Carolina have inherent power to reopen and modify a final decree for alimony and separate maintenance?

"2. Does the Court have authority to modify a decree for alimony based upon an agreement of the parties?

"3. Is there a sufficient reservation in the decree dated November 22, 1937, to allow a Court to modify such decree if a proper showing of changed conditions can be made as justification for such modification?

"4. Does the Court have power to modify a decree for alimony as to installments which have already accrued?"

The answer to each of these questions is "yes", as will be further developed.

One provision of the decree signed by Judge Sease on November 22, 1937, provided that Mrs. Jeter should have the care and custody and possession of the infant daughter of the parties. The care and custody of a minor child is peculiarly within the jurisdiction of a Court of equity and no decree can be final as to such custody. If at any time circumstances should arise which would make it unwise and improper for Mrs. Jeter to have possession and custody of her daughter, the Court would have the right to change that possession and custody as the welfare of the minor is the main care of a Court of equity.

Referring to the power of a Court of equity to reopen and modify a final decree for alimony and separate maintenance, it seems clear that decrees are, and on principle should be, subject to change or modification as circumstances may require. *Smith v. Smith,* 51 S. C., 379, 29 S. E., 227. "A decree for alimony is not unchangeable. Under a change of circumstances, the amount may be either increased or diminished: * * * the allowance is a matter of sound discretion." *Prince v. Prince,*

1 Rich. Eq., 282. It seems that the following is a clear statement of the law in this State. The right to make such changes in the amount of alimony originally granted by the Court for a wife's support and separate maintenance, as the altered conditions of the parties may show to be equitable and necessary is an inherent power in the Court, and no reservation in the former decree is necessary to authorize it.

If a Court of equity had no such authority the matter of contempt proceedings would be automatic. The Judge would have no discretion but upon each application the Court would have to hold the person failing to pay the alimony in contempt and put him in jail, even though it might appear that ill health or financial disaster had come upon the delinquent husband and that he was in such condition as to be unable to comply with the orders. This is a monstrous doctrine that a Court of equity has to act automatically without any discretion.

Where anything remains for the future action of the Court of equity the whole matter remains open and the Court may inquire into the matter fully before passing any order to hold a party in contempt for not complying with former orders.

Does the fact that the decree for separation and alimony is based upon an agreement with the parties, change the jurisdiction of the Court and tie the hands of the Judge from any further discretion? "The general rule is that, where a Court has the general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement·entered into by the parties to the action." The above is quoted from Annotation, 109 A. L. R., page 1068, and is supported by numerous authorities therein collected. In the case of *Worthington v. Worthington,* 224 Ala., 237, 139 So., 334, Annotated 109 A. L. R., 1069, it was held that, "neither the fact that the Court did not reserve control in the decree, nor the fact that the alimony stipulated

rested upon the agreement of the parties, affected the right of the Court to modify an alimony award because of subsequent changed conditions. The Court stated that it had adopted the theory that the agreement of the parties becomes merged in the decree, and therefore loses its contractual nature, at least to the extent that the Court has the power to modify the decree when changed circumstances so justify." This language and holding is approved as a correct statement of the law.

Is there sufficient reservation in the decree of November 22, 1937, to allow the Court to modify such decree if a proper showing of changed conditions can be made as justifiable for such modification? It seems that a mere reading of this reservation shows that the cause remained open for the determination of any questions which might arise for future consideration by the Court, and the Circuit Judge was in error in holding that, "The decree was passed as a final adjudication in the matter and when the same was issued the Court thereby exhausted its jurisdiction in the cause." The question, whether in those states permitting divorce there is a difference between divorce *a mensa et thoro* and a divorce *a vinculo matrimonii* as to the right of the Court to modify decrees fixing alimony, has no application in this State as divorce of neither kind is permitted and alimony is allowed upon legal separation.

Does the Court have the power to modify a decree for alimony as to installments which are already accrued? There seems to be no sound reason why the Court should not have the right. If upon the hearing of proceedings to hold Mr. Jeter in contempt for the non-payment of past-due installments it should appear that he is unable either on account of financial reasons, ill health, or other just cause to pay, the Court would certainly have the right to investigate and decide the question of his ability to pay before adjudging him in contempt for not paying and put him in jail. This question, along with the others taken up in this opinion are such that the Court hearing this matter

is untrammelled by any holdings of the decree of November 22, 1937, and should give full consideration to the question of a modification of the decree of that date. Mr. Jeter was entitled to a hearing and consideration of his petition and to an order of reference to take testimony so that he would have the opportunity to show what reasons he can why the former order should be modified and the Judge committed error in not so ordering.

Judgment reversed and case remanded for further proceedings in accordance with this opinion.

Mr. Chief Justice Bonham, Mr. Justice Fishburne and Mr. Acting Associate Justice Wm. H. Grimball concur.